May I please the court? My name is Amos Lawrence and I represent the petitioner in this case, Ezequiel Argueto-Hernandez, who has appealed the BIA's denial of his application for political asylum, which was based on his fears of future persecution by the criminal gang Mara Salvatrucha, as a result of his resistance to the recruitment of the BIA. As a recruitment or a conscription case, this case is governed by INS v. Elias Zacharias, which requires as a threshold matter that the recruitee establish that he resisted recruitment on a statutory basis. My client satisfied this requirement by credibly testifying that he could not be a member of this criminal enterprise because his violent activities conflicted. It isn't a question of his frame of mind or his belief, is it? Isn't it a question of what the persecutors were doing and what was in their minds? It has to be persecution on account of. Well, there's two prongs. And recruitment cases are a distinct type of asylum case. And Elias Zacharias says as a threshold matter, the applicant must show that he resisted recruitment for a statutory reason. In that regard, those cases are distinct from. But I'm interested in the other prong. Okay. Don't you have to show that he resisted because. Yeah. That the persecutors were motivated by an anti-religious sentiment. Well, in pre-Real ID Act cases, which this is, the second prong is that the applicants show that there was some evidence of statutory motives. And what's that evidence? Because, frankly, I couldn't find it. He himself says, and when the members of the Mara Salvatrucha ask you to join their group and you said no, you wouldn't join their group. Did you tell them why? I simply told them that I did not get, didn't want to get involved in that type of group. So then they told me that if I was not with them, I was against them. I'm just having a hard time finding the religious basis. I understand, Judge. As I said, Elias Zacharias said that there needed to be some evidence and that it could be circumstantial evidence. And the circumstantial evidence that supports the inference of statutory motives is, one, my client testified that everyone in his neighborhood of San Luis was aware that his family was members of the Evangelical Church. Number two. Wait a minute. Does that include the persecutors? Well, I'll get to that. The second was that the persecutors demonstrated their knowledge that he was from the neighborhood of San Luis, demonstrated that they were acquainted with him and at least acquainted with something about that neighborhood. And thirdly, my client said, in accordance with his religious beliefs, that he could not be involved in their kind of group. That's an indirect reference to his opposition to participating on... With all due respect, that's really a house of cards requiring one speculation piled on top of another. Well, this court has... There's no direct evidence at all, and if there's circumstantial evidence, it's awfully weak to show that they knew that he was involved in religious activities. We're looking at a broader principle of political asylum protecting practice of religion. Their recruitment of him had the inevitable result of conflicting with the practice of his... the tenets of his religion. It's well known that he is the minority in his neighborhood as a member of the evangelical church, and they know he's from that neighborhood, showing some acquaintance with that neighborhood of San Salvador. And furthermore, he stated that he did not want to be involved in their kind of activities. Our position is to require more direct proof would be imposing an unrealistic burden on him. May I ask you this, Mr. Lawrence? Of course, Your Honor. This is an appellate court. I don't think the issue is whether we have some circumstantial evidence of the statutory grounds for claim of asylum. The BIA having affirmed the IJ's determination that there wasn't persecution, he doesn't qualify as a refugee, isn't the scope of review of our power to affirm unless we find the substantial evidence which compels us to find contrary? Doesn't it have any compelling evidence? As I submitted with the supplemental authority, in Ramadan, this court determined that questions of statutory motives are mixed questions of fact and law. And the law part of it is you have de novo review of. The factual part is, as you said, is subject to substantial evidence. But wait a minute. Ramadan was a matter of mixed questions of fact and law. Here we're dealing with a factual question. Was he persecuted by Mara Sabatucci because he was an evangelical Christian? That's a factual question. Well, that's one way of looking at it. And the other way of looking at it is, did he meet his burden of establishing a statutory basis for persecution based on undisputed facts? When you point to undisputed facts which are compelling evidence that he was indeed persecuted by Mara Sabatucci for Christian evangelical ideas, then we can decide the legal question of whether he carried his burden. But isn't the first question, did he produce evidence which compels a finding? Well, my position is that the judge performed inadequate analysis by eliminating his focus exclusively on the MS's principal reason, an initial reason for recruiting him. In all recruitment cases, that is to swell the ranks. I think the judge neglected to analyze the case properly by then determining whether MS's apparent desire to harm him for his refusal might have been motivated by an additional reason, a statutory reason. So it's a mixed motive case. So we have not disputed the judge's finding of fact and law that their principal reason was to swell the ranks. But our position is that would be the case inherently in any conscription case. The question is, is there something in addition here? And I don't believe the judge properly analyzed that. And I think the manner of review of the judge's decision of her methodology would be a de novo question. We've had lots of cases like this. I wrote two opinions years ago on Borja and Briones that talked about the mixed question. I just don't see any evidence here at all that supports your position. We really have to guess that that's what they had in their minds when their behavior seems to suggest otherwise. They're just thugs who wanted money. Well, on five out of six of their encounters, they're getting money. So the claim is based on the encounter where they tried to recruit him. I understand that. The other thing that sort of detracts from your case is that originally the claim that this was social persecution, and then all of a sudden it morphed into religious persecution. I mean, it seems that your side is grasping around trying to find an on-account-of basis. I've represented this client from the beginning, and the social group has always been a secondary claim. In fact, the government's position is that we waived that by not raising it previously, the social part. See, that's what I mean. You were looking around for something to hang your hat on, and the social one didn't work, so you ended up with this one. No, Your Honor. Respectfully, no. I never exerted as a principal ground any social grounds. As a ground. That was always a secondary ground in the brief to the BIA and to the judge. And it was the judge who said, well, you've based this claim on religion, but I guess it's also social group. It was the judge who volunteered that. Our position has always been that he refused to join this group because he's devoutly religious, and that that would conflict with his religious beliefs. Thank you. Thank you very much. Counsel. May it please the Court. Ada Bosk on behalf of the Attorney General. Argento Hernandez's unexpressed religious beliefs do not compel finding that these gang members were targeting him on account of that belief. In his asylum application, Mr. Argento said that he was targeted because they thought that the gang members thought he was a member of a rival gang. That does not have anything to do with religion. And in his asylum application, actually the only box he checked off was particular social group. And I believe that's at AR-137. Nowhere during his testimony does he say that or is there any indication that the gang members knew or cared about his religious beliefs. Most of the confrontations occurred while Mr. Argento was delivering bread and thus known to have money. The last few incidences, including the one time that he was physically assaulted, occurred in a different neighborhood. So even if, as Argento argues before this Court, everybody in his neighborhood knew that he was not Roman Catholic and cared about that, there's no clear indication that individuals, including those gang members outside of that neighborhood, knew that he was of a different faith and would be motivated to target him on account of that. The Mr. Argento also indicated that his cousin, after he left El Salvador, was also targeted while delivering bread. Again, the clear indication from that is or the logical inference is that he was motivated that the gang targeted him because he had money and therefore they could rob him. Mr. Argento testified that the individuals that were of a different faith in his family were his mother, his father, and his son and, excuse me, his daughter, his sister. Excuse me. And that's at AR 80. Given the sequence of facts that Mr. Argento testified to and that he indicated in his asylum application, they're simply under Elias Zacharias or under this Court's precedent in Sangha and Ocha. There's no clearly drawn reference that can be drawn that supports finding that the evidence compels he was targeted on account of religious persecution and not, as in Santos Limos, one of the more recent cases, that he was targeted for economic reasons. Mr. Argento's argument that the immigration judge's analysis was legally wrong is also not compelling. The immigration judge simply found no evidence of any other motivation other than an economic motivation. That doesn't mean that he didn't consider the other arguments that's evident from his decision that he not only considered the religious claim, but he also tried to identify other bases in the statute that would get Mr. Argento asylum protection. But the evidence, Mr. Argento's asylum application, the police report that he submitted, and his oral testimony all pointed to an economic motivation. And for those reasons and the reasons set forth in our brief, we ask that the Court deny the petition for review. Well, he was found to be credible, huh? Correct, Your Honor. And as a matter of fact, the IJ mentioned that he seemed like a very straightforward and honest good young man. Now, why isn't his testimony that he was persecuted because of religious grounds sufficient? Well, there's no nexus between his unexpressed religious belief and the gang members that targeted him. And that's the – Argento wants to focus this Court on one prong of Elias Zacharias, but Elias Zacharias and the cases that this Court has subsequently considered, most particularly in Sangha, is not just an unexpressed belief, but what did the persecutor think? What did he say? In none of the confrontations between Mr. Argento and the gang members, did they ever ask him about his religion? Did they ever indicate that he – that they cared in any way about his religion? He was targeted the majority of the times while he was delivering bread and therefore having – possessing money. Each of those times, he was simply robbed and let go. The last couple of incidences, as I said, occurred in a different neighborhood, and they – yes, they did attempt to recruit him. He didn't say anything about his religion. He simply said, I don't want to be a member of the gang, and they let him go. They physically assaulted him when he resisted a robbery, but that's not – there's no clear indication that that assault is any way – is in any way connected with his religious beliefs. The last confrontation occurred on a bus where one gang member thought he was a member of another gang and confronted him for that reason. There had – again, going back to this Court's decision in Sangha, this Court said, well, what do we look at for clear indication? We look at what the gang – what the persecutor, here the gang member, said. Whether there's any other logical explanation for the targeting. Here there is. It's an economic targeting. And whether – sorry. The last thing that the Court looked at was whether there's any evidence that the persecutor was aware of the alien's beliefs. And here, again, Agente can point to nothing aside from the fact that he, in his neighborhood, was a member of a different church than the Roman Catholic church. And so from that, he draws the assumption that everybody in his neighborhood would know that he was not Roman Catholic. And, moreover, that he – they would care that he wasn't Roman Catholic. From – even if the Court accepts that – Is there any indication that the evangelical precepts are any more against violence than the Roman Catholic precepts? The only evidence concerning the evangelical precepts are Mr. Agente's testimony. And he testified that he – they simply don't believe in violence. And that, as a result, they wouldn't participate in a group like the MS – a gang like the MS. That's not to say that somebody who's Roman Catholic is more likely to participate in a gang. I don't – but that's the extent of the testimony. And, again, there's nothing that links with the MS gang members trying one time to recruit Mr. Agente, assaulting him one time, knew about his particular religious beliefs, and were motivated by that. In contrast to being motivated by economic means – they robbed him, a number of times – or trying to recruit him, or believing he was a member of a different gang and targeting him because of that. So, again, for those reasons and the reasons set forth in our brief, we ask that the Court deny the petition for review. Mr. Lawrence. Thank you, Judge. I just have a brief comment in rebuttal. And that is this, that this case is, in our opinion, is analogous to mixed motive cases like Borja v. INS, which is at 175 F3rd, where a woman was extorted money from the NPA in Philippines. It's correct evidence of the other part of the mix. I understand. This addresses a slightly different question, Your Honor. And the question – she expressed some opinion that she was against the organization. And I can see that it was probably a more decisive objection than this. But in that case, this Court reasoned that this was a case of extortion plus – extortion plus political opinion. No question the NPA wanted money from her, and they were going to harm her for not giving money. So you would say that's an economic motivation, an economic goal. And yet because she expressed a political opinion, it also became a political question. And our position is this is conscription plus. Their goal is to swell their ranks, to advance their criminal enterprise. But it's a plus factor if there's another factor that they have – that they have to overcome to achieve that objective. So all the focus on economic motivations and expanding their ranks is well taken, but that doesn't exclude the possibility that there's a plus. Possibilities aren't enough on petitions for review. Well, actually, the question – Possibilities aren't enough. You're asking us to redo the factual underpinnings of the case. I'm asking for you to find that there's some circumstantial evidence of religious motivation that the judge's analysis didn't consider. Circumstantial evidence isn't enough on a factual issue. Well, according to Elias – Some evidence that would compel any reasonable person to so conclude. And based on what I read from your client's own testimony, that's the problem in the case. He says, I didn't tell them. I wrote Borhat's and Enbank opinion many years ago. I understand, Judge. You know it. You read it. The woman made very express her double reasons for resisting. I mean, you just – I can't find anything else. Well, so she said she did. My position is, is that if you require this kind of evidence – She said she did? Well, that was what the record was. Well, I understand that, Judge. But I think this Court has also recognized that it's foolhardy – it's unreasonable to expect somebody to foolhardily tell their persecutors, I'm against you. I've seen hundreds of cases like that. All the time. I mean, we sit up here. These cases come at us like an avalanche. And we see cases all the time where it's clear what the intent of the people. I understand that. And like such as in Borhat, a woman confronting the NPA. Yes. She didn't have any problem telling them what her problem with them was. And then it got her in a lot of trouble. I understand that, Judge. But holding that kind of standard, I think, is unrealistic. That is to write an opinion that says even if you don't tell anybody what your reasons are, and even if it's not clear that they know, we have to overrule the BIS. No, I'm saying I think there's an inference that they did know, that they had to know because they control San Salvador. MS is that powerful. So they know the religious affiliation of everybody in San Salvador. No, I believe there's an inference that they were aware of my client's identity and would know his religion. I ask the same question of counsel. How are the precepts of the evangelical Christian religion against violence any different from those of the majority of Roman Catholics? My understanding from reading the record is it's the equivalent of somebody who has conscientious objection. Somebody who is not allowed to participate in violent conduct. Catholics is not the precepts of Catholicism are not that rigid. All right. Thank you. Thank you. All right. This matter will be marked submitted. Counsel, thank you very much for your argument.
judges: Trott, Bea, Conlon